**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SIMON PUNSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 5409 |
| | ) | |
| JUDITH KARBAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's motion to dismiss [28] Plaintiff's Second Amended Complaint ("SAC"), Plaintiff's response brief in opposition [31], and Defendant's reply brief [34]. For the reasons stated below, Defendant's motion to dismiss is granted in part and denied in part.

**I.      Background**

Plaintiff initially filed this lawsuit in the United States District Court for the Eastern District of New York invoking the diversity jurisdiction of the federal courts, 28 U.S.C. § 1332. The lawsuit subsequently was transferred to this district. Judge Guzman, to whom this case initially was assigned, granted Plaintiff's application to proceed *in forma pauperis*. After Defendant moved to dismiss Plaintiff's first amended complaint, Plaintiff filed a motion for appointment of counsel. This Court granted Plaintiff's motion, and appointed counsel filed a four-count, second amended complaint on Plaintiff's behalf. In that complaint, Plaintiff asserts claims for (i) defamation, (ii) breach of fiduciary duty, (iii) misrepresentation, and (iv) intentional interference with custodial relations. Defendant now has moved to dismiss Plaintiff's second amended complaint in its entirety.

At the motion to dismiss stage, the facts are taken from the well pleaded allegations of Plaintiff's operative second amended complaint. Around November 2005, Plaintiff contacted Defendant by telephone seeking her professional services as a licensed clinical professional counselor. SAC ¶ 5. Plaintiff alleges that Defendant was not licensed in the State of New York to practice as a counselor at that time, and remains unlicensed. *Id*. ¶¶ 6-7. Plaintiff further alleges that Defendant was aware that Plaintiff believed that she was licensed in New York as a clinical professional counselor. *Id*. ¶ 8.

Plaintiff also alleges that Defendant represented to Plaintiff that she worked often with clients in New York and met with clients personally in New York. SAC ¶ 9. Plaintiff agreed to retain Defendant as a counselor in November 2005. *Id*. ¶ 10. According to Plaintiff, Defendant suggested that the therapy sessions be conducted by telephone, and in fact Plaintiff and Defendant engaged in two therapy sessions by telephone, each lasting approximately thirty minutes. *Id*. ¶¶ 11-12. After those two sessions, Plaintiff chose to stop counseling with Defendant, but paid in full ($150 total) for the two sessions. *Id*. ¶¶ 13-14.

Plaintiff alleges that during the two therapy sessions, he did not discuss any details of his prior marriage to Miriam Punski.[1] SAC ¶ 15. Plaintiff further alleges that he has never granted Defendant permission to discuss any aspect of his therapy sessions with any other person, including, but not limited to, Miriam Punski or Wendy Sonneborn. *Id*. ¶ 16. In addition, Plaintiff alleges that he had never discussed, disclosed, or revealed to anyone that he had therapy sessions with Defendant. *Id*. ¶ 17. On or about March 29, 2007, Miriam Punski commenced an action for child custody and an order of protection in New York City Family Court in Kings

---

[1] In his complaint, Plaintiff refers to his former spouse as "Miriam Punski." In the letter written by Defendant that is attached to the complaint, Defendant refers to Plaintiff's former spouse as "Miri Polsky." To avoid confusion, and because the allegations of the complaint control at this stage, the Court will refer to Plaintiff's former spouse as "Ms. Punski."

County, New York. *Id.* ¶ 18. On June 28, 2007, Defendant delivered a letter to Ms. Punski's attorney, Ms. Sonneborn. *Id.* ¶ 22. On or about July 27, 2007, Ms. Punski, through her attorney, Ms. Sonneborn, submitted the June 28 letter to the Family Court. *Id.* ¶ 19. Plaintiff alleges that the letter (which is attached as Exhibit A to Plaintiff's second amended complaint) contained statements falsely represented as accurate summaries of statements made by Plaintiff during therapy sessions with Defendant. *Id.* ¶¶ 19, 22, 23.

Among other things, the letter states that it is being written "regarding your client, Miri Polsky" and that it was written with Ms. Polsky's permission. SAC, Ex. A. The letter further states that Defendant had been "counseling with Miri for the past year and a half." *Id.* It also reports that when Defendant's therapy with Ms. Polsky began, Defendant also "spoke several times with her husband, Shimon, as well." *Id.* It next remarks parenthetically that Defendant "assume[s] that my evaluation will not be admitted by the court," but suggests that "perhaps you [Ms. Sonneborn] might benefit from knowing some facts about this case." *Id.* The letter then states that Plaintiff admitted to sexual abuse, physical abuse, and extreme bouts of anger. *Id.* Defendant further stated that she "felt that Shimon had very serious issues that I chose not to deal with on the phone, and then referred him to a male therapist in Boro Park." *Id.* The letter closes by offering to speak with Ms. Sonneborn. *Id.*

Plaintiff also alleges, upon information and belief, that at some time between November 2005 and June 2008, Defendant disclosed to Ms. Punski that Plaintiff "had engaged in therapy sessions with Defendant." SAC ¶ 21; *see also id.* ¶ 32 (alleging that Defendant "disclos[ed] information regarding Plaintiff's attendance at therapy sessions with Defendant" to Ms. Punski and Ms. Sonneborn). He also alleges that Defendant "acted in concert" with Ms. Punski to

provide false information to Ms. Sonneborn that was intended "to be used to craft an argument to interfere with Plaintiff's custodial rights in his minor child." *Id.* ¶¶ 46-47.

In his defamation count, Plaintiff alleges that he was damaged "in that the New York City Family Court ordered a period of only supervised visitation between Plaintiff and his child and in circulation of Defendant's allegations in Plaintiff's community, resulting in a loss of reputation and pain and suffering." SAC ¶ 26. In his breach of fiduciary duty count, Plaintiff alleges that he was damaged "in that the fact of his attendance at therapy sessions was improperly used to interfere with his visitation and custody rights with his minor child for a period of time" and "that he paid Defendant for her services in exchange for consideration which included, in part, confidentiality in their sessions." *Id.* ¶¶ 33-34. In his misrepresentation count, Plaintiff alleges that he was damaged "in that he paid Defendant for her services and his retention of Defendant's services was improperly used to interfere with his visitation and custody rights with his minor child for a period of time." *Id.* ¶ 44. And, in his intentional interference with custodial rights count, Plaintiff similarly alleges that he was damaged "in that his custodial rights to his minor child were infringed." *Id.* ¶ 49. Plaintiff seeks damages in an amount greater than $75,000, as well as attorneys' fees and costs.

## II. Analysis

### A. Legal standard on motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair

notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)). In other words, the complaint must allege the "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)).

## B. Application of New York law to Plaintiff's claims[2]

### 1. Defamation

Defendant seeks dismissal of Plaintiff's defamation claim on the ground that "the purported defamatory statements that defendant authored are <u>not</u> actionable because they are subject to an absolute privilege that the State of New York has created for statements made in the course of judicial proceedings." Def. Br. at 4. In a recent decision, *Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163, 171-75 (N.Y. App. Div. 2007), the New York Appellate Division comprehensively set forth the state of the law concerning the "absolute privilege" associated with "judicial proceedings." The court began its discussion by noting that "[a]bsolute privilege has been recognized in 'a very few situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to defendant's motives.'" *Sexter*, 38 A.D.3d at 171. It then stated that "[j]udicial proceedings are among the settings in which an absolute privilege is recognized." *Id*. The "rule" in New York is that "a statement made in the course of legal proceedings is absolutely privileged if it is *at all pertinent* to the litigation." *Id*. (emphasis added). And the rationale is straightforward: "[a]s a matter of public policy, the possible harm to individuals barred from recovering for defamatory statements made in connection with judicial proceedings is deemed to be 'far outweighed by the need * * * to encourage parties to litigation, a well as counsel and witnesses, to speak freely in the course of judicial proceedings." *Id*. at 171-72 (citing *Martirano v. Frost*, 25 N.Y.2d 505, 508 (1969)). The protection is so complete that "an offending statement pertinent to the proceeding in which it was made is absolutely privileged, regardless of any malice, bad faith, recklessness or lack of due care with which it was spoken or written, and regardless of its truth or falsity." *Id*. at 172.

---

[2] The parties agree that, under applicable Illinois choice of law rules, the substantive law of New York applies in this diversity action.

For present purposes, the critical questions are (i) whether the privilege extends to Defendant at all, and, if so, (ii) whether the statement made by Defendant in her July 2007 letter to Ms. Sonneborn was "at all pertinent to the litigation" between Plaintiff and his former spouse. In regard to the former question, the privilege "extends to judge, jurors, counsel, witnesses, and * * * the parties to a [judicial] proceeding." *Sexter*, 38 A.D.3d at 171. The only category into which Defendant may fall is as a witness. In fact, Plaintiff's second amended complaint states that the allegedly defamatory letter was "submitted to the New York City Family Court." SAC ¶ 19. The complaint further alleges that Plaintiff sustained damages as a result of the court's order (*id*. ¶ 26), thereby supporting an inference that the Court in fact considered and relied on the letter in rendering its decision. Thus, notwithstanding the expression of doubt by Defendant that her letter would be "admitted" by the court (*id*, Ex. A), the allegations of the complaint – which control at this stage of the case – presume that the letter at least was a factor in the court's decision. Accordingly, the court must conclude that Defendant was a "witness" within the scope of the absolute privilege recognized under New York law. *Sexter*, 38 A.D.3d at 171; see also Restatement (Second) of Torts sec. 588, cmt. b (noting that the privilege also protects a witness "while engaged in private conferences with an attorney at law with reference to proposed litigation"); cmt. c (explaining that "the fact that the testimony is offered voluntarily and not in response to a question" does not "prevent it from being privileged if it has some reference to the subject of the litigation").

Turning to the second question, under New York law, "[t]he pertinence of a statement made in the course of judicial proceedings is a question of law for the court" that "is properly determinable on a motion to dismiss addressed to the pleadings and the documentary evidence alone." *Sexter*, 38 A.D.3d at 173. The test for "pertinence" is an "extremely liberal" one, and

"any doubts are to be resolved in favor of pertinence." *Id*. "A statement made in the course of judicial proceedings is privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation." *Id*. Under that test, "[t]o be actionable, a statement made in the course of judicial proceedings 'must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame." *Id*. (quoting *Martirano*, 25 N.Y.2d at 508). In other words, "'the barest rationality * * * suffices' to establish the offending statement's pertinence to the litigation." *Id*. (quoting *Seltzer v. Fields*, 20 A.D.2d 60, 62 (1963)).

Applying the "extremely liberal" standard for "pertinence" set forth under controlling New York law (*Sexter*, 38 A.D.3d at 173), and resolving any doubts "in favor of pertinence" (*id*.), the Court concludes that the letter sent by Defendant to Ms. Sonneborn in which the allegedly defamatory statements were made lies within the scope of the absolute privilege. To begin with, the letter is addressed to Ms. Sonneborn in her capacity as an attorney for Ms. Polsky, and it specifically refers to Ms. Polsky as Ms. Sonneborn's "client." While the letter "assume[s]" that Defendant's "evaluation will not be admitted by the court," the letter plainly is intended to provide information to Ms. Sonneborn "about this case." The timing and context also support the conclusion that the letter is at least pertinent to the litigation. Plaintiff's operative complaint alleges that in March 2007, Ms. Punski commenced the New York action for child custody and an order of protection, that Defendant's letter was written in June 2007, and that the letter actually was "submitted" to the New York Family Court in July 2007. See SAC ¶¶ 18-19 & Ex. A. Any nefarious purpose that Defendant may have had in writing the letter is irrelevant under New York law. See *Sexter*, 38 A.D.3d at 172. All that matters for purposes of Plaintiff's defamation claim is that the letter had some even barely rational connection to the

litigation and was not "so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame." *Id*. at 173. Under that standard, Defendant's June 28, 2007 letter lies within the scope of the absolute privilege recognized as a defense to a defamation claim under New York law.

If Plaintiff's defamation claim rested solely on the statements made in Defendant's June 28, 2007 letter, Count I of Plaintiff's second amended complaint would be subject to dismissal. However, Plaintiff also contends that, taking the allegations of the complaint and the statements in the letter together, he has adequately pled that Defendant and Ms. Punski discussed the subject matter of the letter prior to the litigation and that Defendant made defamatory statements to Ms. Punski "outside the context of any lawsuit." Pl. Br. at 5. Bearing in mind (i) the liberal pleading standards under Rule 8 – requiring only a "short and plain statement" giving "fair notice" of a claim to relief that rises above the "speculative level" – and (ii) the Court's obligation to draw all reasonable inferences from the complaint and attached materials in favor of Plaintiff, the Court agrees that Count I narrowly survives as to statements that are alleged to have been made to Ms. Punski "outside the context of any lawsuit." Plaintiff will be allowed to take discovery as to any such statements to determine whether his claim can be sustained at the summary judgment stage of this case.

### 2. Breach of fiduciary duty

Under New York law, to state a claim for breach of fiduciary duty, Plaintiff must allege (i) the existence of a fiduciary relationship and (ii) a breach of duties arising out of such a relationship. *Cutler v. Ensage, Inc.*, 2007 NY Slip Op. 52373U, at 7 (App. Div. 2007). "A fiduciary relationship arises when one has reposed trust and confidence in the integrity and fidelity of another who thereby gains influence or assumes control and responsibility." *Id*. The

relationship between a psychiatrist or counselor and her patient may create a fiduciary trust that gives rise to an implied covenant to maintain patient confidentiality. See *MacDonald v. Clinger*, 84 A.D.2d 482, 483-86 (App. Div. 1982).

Here, Plaintiff alleges that a fiduciary relationship was formed on the basis of his telephone contacts with Defendant, including two "therapy sessions by telephone for approximately thirty minutes per session within a two day period." SAC ¶¶ 5, 11, 12. Plaintiff states that Defendant demanded payment of $150.00 for those sessions, and that he in fact did pay in full. *Id.* ¶¶ 12-14. The letter from Defendant attached to the complaint confirms that Defendant "spoke several times" with Plaintiff, that Defendant "chose not to deal with" Plaintiff's issues over the phone, and that Defendant "referred [Plaintiff] to a male therapist." SAC, Ex. A.

The Court concludes that Plaintiff satisfactorily has alleged the existence of a fiduciary relationship with Defendant. Plaintiff has alleged that he sought Defendant's services as a "licensed clinical professional counselor" and that Defendant was aware that Plaintiff sought her professional services. Defendant's own letter further supports the inference that the phone conversations between the parties took place in a professional capacity, as does the allegation that Defendant requested, and Plaintiff tendered, compensation for those sessions. Accordingly, Plaintiff at least has alleged the existence of a relationship that gave rise to an implied covenant to maintain patient confidentiality under New York law. See *MacDonald*, 84 A.D.2d at 486.

Unwarranted disclosure of confidential patient information may constitute a breach of that implied covenant. See *MacDonald*, 84 A.D.2d at 487. The question is whether Plaintiff adequately has alleged that Defendant disclosed any confidential information that she obtained in the course of her counselor-patient relationship with Plaintiff.

Plaintiff points to Defendant's disclosures of allegedly confidential information to Ms. Punski and Ms. Sonneborn as breaches of Defendant's fiduciary duties. To be sure, as Defendant points out (Def. Br. at 8), Plaintiff specifically alleges that he "did not discuss any details of his prior marriage to Miriam Punski during his therapy sessions with Defendant." SAC ¶ 15. Accepting that allegation as true, as the Court must at this stage of the case, the Court cannot infer or conclude that the allegedly defamatory material in Defendant's June 28 letter[3] supports a breach of fiduciary duty claim. If Plaintiff did not discuss such matters during his therapy sessions, then Defendant's recitation of those matters in the letter cannot be said to have disclosed "confidential patient information."

Given Plaintiff's disavowal of any discussions with Defendant of "details of his prior marriage," the potentially actionable disclosure alleged in the complaint necessarily must be the disclosure of his "attendance at therapy sessions." In that regard, Plaintiff alleges that he "never discussed, disclosed, or revealed to *anyone*" – an allegation that must be read to include his then-spouse – "that he had therapy sessions with Defendant." SAC ¶ 17 (emphasis added). He also alleges that he "never granted Defendant permission to discuss any aspect of his therapy sessions with *any other person*" – again, presumably including Ms. Punski. *Id.* ¶ 16 (emphasis added). Together, those two sentences must be read to allege that only Plaintiff and Defendant were aware of the two counseling sessions on which Count II hinges as they transpired. However, Plaintiff alleges, upon information and belief, that at some time between November 2005 and June 2008, Defendant disclosed to Ms. Punski that Plaintiff "had engaged in therapy sessions

---

[3] Defendant does not cite any authority for the proposition that the absolute privilege recognized by New York law applies to any cause of action other than defamation. But even if disclosure in the June 28 letter of Plaintiff's therapy sessions with Defendant could not be actionable as a result of the privilege, Count II still would survive on the basis of the allegations relating to disclosures made to Ms. Punski wholly apart from the letter.

with Defendant." SAC ¶ 21; see also *id.* ¶ 32 (alleging that Defendant "disclos[ed] information regarding Plaintiff's attendance at therapy sessions with Defendant" to Ms. Punski and Ms. Sonneborn). Plaintiff also contends that, at least as a matter of reasonable inference, the June 28 letter to Ms. Sonneborn that was filed in the Family Court disclosed the existence of a professional counseling relationship.

It remains to be seen whether Plaintiff will be able to sustain the allegations (i) that Defendant disclosed Plaintiff's counseling sessions to Ms. Punski and/or in Defendant's June 28 letter, (ii) that any such disclosures to Ms. Punski were confidential (*i.e.*, that Ms. Punski already was not aware of the sessions), and (iii) that he suffered any compensable damages as a result of the disclosure of the mere fact that he had engaged in two therapy sessions, each lasting thirty minutes. But it is the allegations that count at the motion to dismiss stage. And on the basis of the allegations in the operative complaint here, Count II survives on the basis of the purported disclosure of a counseling relationship between Plaintiff and Defendant that would have remained confidential but for that disclosure.

### 3. Misrepresentation

In Count III of Plaintiff's second amended complaint, Plaintiff alleges that he sustained damages as a result of Defendant's misrepresentation that she was a licensed clinical professional counselor in the State of New York. SAC ¶¶ 37-39. Plaintiff styles Count III as a claim for "misrepresentation" and contends in his response brief that Count III may be read as "an alternative pleading of two related causes of action," one for fraudulent misrepresentation and the other for negligent misrepresentation.

To state a claim under New York law for fraudulent misrepresentation, Plaintiff must show that (i) Defendant made a representation as to a material fact; (ii) such representation was

false; (iii) Defendant intended to deceive Plaintiff; (iv) Plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (v) as a result of such reliance Plaintiff sustained a pecuniary loss. See, *e.g.*, *Ross v. Louise Wise Services, Inc.*, 686 N.E.2d 189, 195 (N.Y. 2007). A claim for negligent misrepresentation exists where: (1) a special relationship of trust or confidence existed, thereby creating a strict duty for the defendant to impart correct information to the plaintiff; (2) the information given was false; and (3) there was reasonable reliance upon the information given. See, *e.g.*, *Hudson River Club v. Consolidated Edison Co.*, 275 A.D.2d 218, 2201 (N.Y. App. Div. 2000).

At first glance, one might suppose that different pleading standards might apply to fraudulent and negligent misrepresentation claims – with Rule 9(b) applying to the former and Rule 8 to the latter. But New York federal courts have held that to state a claim of "common law negligent misrepresentation under New York law, [Plaintiff] must plead the statements or misstatements constituting the fraud with particularity, and must also plead that they reasonably relied on the alleged misrepresentations." *Scantek Medical, Inc. v. Sabella*, 583 F. Supp. 2d 477, 493 (S.D.N.Y. 2008) (citing, *inter alia*, Fed. R. Civ. P. 9(b)). To satisfy Rule 9(b)'s requirement that Plaintiff plead the circumstances of the alleged misrepresentation "with particularity," Plaintiff must set forth "the who, what, when, where, and how" of the alleged fraud. *Borsellino*, 477 F.3d at 507.

At best, the allegations of the second amended complaint contain the headline and perhaps the opening sentence, but fall short of the "first paragraph of a newspaper story" (*Borsellino*, 477 F.3d at 507) on any alleged fraudulent misrepresentation made by Defendant to Plaintiff. The operative complaint contains no allegation that Defendant explicitly told Plaintiff that she was a licensed therapist, or even that Plaintiff specifically asked about Plaintiff's

licensing status.  Nor is there any allegation that Defendant stated expressly that she would keep the counseling sessions confidential.  Rather, Plaintiff asserts that Defendant made unspecified "affirmative statements" that "convinced" Plaintiff that Defendant "was licensed in the state of New York" and "led plaintiff to believe that their therapy sessions would remain confidential." SAC ¶¶ 37, 40.  Thus, while the complaint provides in general terms the "who, when, and where" – Defendant, in or about November 2005, over the telephone – the complaint says almost nothing about "what" precisely was said or "how" Plaintiff was "convinced" or "led to believe" the Defendant was a licensed clinical professional counselor or that their sessions would be confidential.  See *id*.  Nor are any details provided as to why Plaintiff believes that Defendant "was aware that Plaintiff believed" that she was licensed.  See *id*. ¶ 8.  The allegations therefore are not sufficiently detailed or "particularized" to satisfy the heightened pleading standard under Rule 9(b).  Accordingly, the Court grants Defendant's motion to dismiss Count III of Plaintiff's second amended complaint.

### 4.    Intentional interference with custodial relations

In Count IV of his second amended complaint, Plaintiff asserts a claim for interference with his custodial rights.  As Plaintiff acknowledges, New York courts have recognized such a tort only in a few cases.  Those cases have involved "'violent abduction, willful disobedience of a court custody order, and wrongful detention.'"  *Casivant v. Greene County Community Action Agency, Inc.*, 234 A.D.2d 818, 819 (N.Y. App. Div. 1996) (quoting *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 531 (N.Y. 1984)).  Plaintiff suggests that Defendant's "outrageous interference in his custody litigation * * * parallels those kinds of cases where the tort has been recognized in the past" and should be viewed as "functionally equivalent to disobeying a court order."  The Court respectfully disagrees that the conduct alleged here fits within the parameters of the tort of

interference with custodial rights as it heretofore has been recognized under New York law. And, as a federal court sitting in diversity jurisdiction, the Court must exercise restraint in extending New York law beyond those parameters, for it is primarily the province of the New York courts and legislature to define the scope of that state's tort laws. See, *e.g.*, *J.S. Sweet Co., Inc. v. Sika Chemical Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005) (noting the "reluctance" of federal courts "sitting in diversity to expand state law" and refusing to recognize a new tort duty). Accordingly, the Court grants Defendant's motion to dismiss Count IV of Plaintiff's second amended complaint.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part (as to Counts III and IV of Plaintiff's second amended complaint) and denied in part (as to Counts I and II of Plaintiff's second amended complaint).

Dated; January 28, 2009

_____
Robert M. Dow, Jr.
United States District Judge